UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA M. GOLLOIAN, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | No. CV-09-3114-JPH <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 17, 23.) Attorney Thomas Bothwell represents plaintiff; Special Assistant United States Attorney Lisa Goldoftas represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 13.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** plaintiff's Motion for Summary Judgment and **DENIES** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Lisa M. Golloian (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on December 18, 2006. (Tr. 103, 106, 119.) Plaintiff alleged an onset date of April 26, 2006. (Tr. 86.) Benefits were denied initially and on reconsideration. (Tr. 65, 73.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Richard A. Say on April 17, 2009. (Tr. 32-60.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 36-46, 55-56.) Vocational expert Jenipher Gaffney also testified. (Tr. 46-55, 57-60.) The ALJ denied benefits (Tr. 13-20) and the Appeals Council denied review. (Tr. 1.) The matter is now

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 52 years old at the time of the hearing. (Tr. 36.) She completed high school. (Tr. 36.) She has work experience as an office clerk and as a nanny. (Tr. 47.) Plaintiff testified that the main problem that keeps her from working is fibromyalgia. (Tr. 37.) She said she is in pain every day all day. (Tr. 37.) She has degenerative disc disease and anxiety problems. (Tr. 37.) She also stopped working because of emotional problems. (Tr. 46.) Plaintiff has been diagnosed with post traumatic stress disorder. (Tr. 44.) She says she cannot go out of the house most days because she is afraid to go out and be around people. (Tr. 45.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since April 26, 2006, the alleged onset date. (Tr. 15.) At step two, the ALJ found plaintiff has the following severe impairments: chronic pain diagnosed as fibromyalgia, mild degenerative changes in the cervical and lumbar spine, anxiety and depression. (Tr. 15.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 15.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

> occasionally stoop, crouch, crawl and kneel. She can occasionally climb ramps and stairs but cannot climb ladders. She is able to understand, remember and carry out short and simple instructions and perform routine tasks. She should have no interaction with the general public and is limited to superficial interaction with coworkers.

(Tr. 16.) At step four, the ALJ found plaintiff is capable of performing past relevant work as an office clerk. (Tr. 20.) Thus, the ALJ concluded plaintiff has not been under a disability within the meaning of the Social Security Act from April 26, 2006 through the date of the decision. (Tr. 20.).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ improperly: (1) rejected the opinions of plaintiff's medical providers; (2) rejected plaintiff's subjective complaints; and (3) determined plaintiff could return to past relevant work. (Ct. Rec. 18 at 19-27.) Defendant argues the ALJ: (1) made a proper adverse credibility finding; (2) properly considered the medical evidence; and (3) made a proper step four determination. (Ct. Rec. 24 at 6-20.)

**DISCUSSION**

**1.    Credibility**

Plaintiff argues the ALJ failed to provide adequate reasons for rejecting plaintiff's subjective complaints. (Ct. Rec. 18 at 23-25.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)  If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted). In this case, the ALJ identified no affirmative evidence of malingering, so clear and convincing reasons supported by substantial evidence are required to properly reject plaintiff's testimony.

Plaintiff first argues the ALJ was not sufficiently specific in discussing the credibility finding. The ALJ stated, "The claimant's allegations concerning her exertional limitations are not credible." (Tr. 17.) The ALJ went on to discuss plaintiff's testimony that she cannot walk father than her mailbox and cannot get out of her house on some days. (Tr. 17.) This adequately identifies the testimony rejected by the ALJ, and plaintiff's first argument is without merit.

The ALJ cited two pieces of evidence in rejecting plaintiff's credibility. First, the ALJ discussed an apparent inconsistency between plaintiff's testimony and the medical record. (Tr. 17.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals. S.S.R. 96-7p. The ALJ noted that despite plaintiff's testimony that she can walk no farther than her mailbox and cannot get out of the house on some days, she reported walking her dog one or two miles each day. (Tr. 17.) Plaintiff reported to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

medical providers in November 2007 and in March, June and October 2008 that she walks her dog one to two miles per day. (Tr. 374, 458, 506, 511.) In July 2008 she mentioned that she walks for 10-15 minutes twice daily and in the last record mentioning walking for exercise from August 2008, she told a provider she "walks a lot." (Tr. 370, 508.) At the hearing in April 2009, plaintiff testified, "I don't really walk anymore because that means I have to go outside. But I walk in my house or I might walk to the mailbox." (Tr. 40.) When asked if she would be able to walk further if she were outside, plaintiff testified, "If somebody was chasing me I could. No, to be honest, it's very painful." (Tr. 40.) This testimony is inconsistent with earlier reports showing an ability to walk up to two miles per day. Plaintiff points to an office visit note from November 2008 showing plaintiff reported to Dr. Eider, her treating rheumatologist, that she had difficulty walking more than one block. (Tr. 503.) Plaintiff's argument this is evidence of a decline, so that by April 2009 her testimony was accurate . (Tr. 503.)   However, it is also significant that despite such complaint, Dr. Eider opined in January 2009 that plaintiff had no restrictions on walking. (Tr. 18, 490-93.) The ALJ's determination that the medical evidence and the testimony are inconsistent was a reasonable conclusion and is supported by substantial evidence.

     Second, the ALJ pointed out that despite testimony that her anxiety symptoms prevent her from leaving the house, plaintiff travels to visit friends and family. (Tr. 17.) Plaintiff testified "sometimes the problem is I can't eve[n] get out of the house on most days. I'm afraid, I'm afraid to go out. I'm afraid to be around people. I get scared." (Tr. 45.) Despite this fear, plaintiff twice reported traveling to California to visit her family, and mentioned traveling to stay with a friend for a few nights at a time. (Tr. 209, 503, 523, 529.) The ALJ also noted plaintiff functions independently, regularly attends appointments, does stained glass work shops and manages finances. (Tr. 19.) Plaintiff points out she reported going to the hospital for depression and anxiety during one trip to California. (Ct. Rec. 18 at 24, Tr. 500, 523.)   While the ALJ's interpretation of the evidence may not be the only reasonable interpretation of the evidence,  the ALJ's conclusion that plaintiff's activities are inconsistent with anxiety so disabling she cannot leave the house most days is a reasonable interpretation of the evidence and is supported by the record.   The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

751 (9th Cir.1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). The reasons cited by the ALJ are supported by substantial evidence and constitute clear and convincing reasons justifying the negative credibility finding.

**2.     Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the opinions of her treating and examining medical providers. (Ct. Rec. 18 at 20-23.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

      a.    **Dr. Eider**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting Dr. Eider's opinion that plaintiff is limited to sedentary work. (Ct. Rec. 18 at 20.) Dr. Eider is a rheumatologist who began treating plaintiff in May 2006. (Tr. 200.) Dr. Eider completed DSHS Physical Evaluation forms in November 2007 and November 2008. (Tr. 270-73, 493-96.) She diagnosed fibromyalgia and assessed a moderate interference with plaintiff's ability to lift and carry. (Tr. 272, 492.) Dr. Eider opined that plaintiff is limited to sedentary work and also identified restrictions on balancing, bending, climbing, crouching, kneeling, pulling, pushing, reaching and stooping. (Tr. 272, 492.) Additionally, in July 2008, Dr. Eider indicated she agreed that plaintiff's stated need to lie down for one and a half hours per day is reasonable. (Tr. 279.) The ALJ gave Dr. Eider's opinion little weight. (Tr. 18.)

The first reason given by the ALJ in rejecting Dr. Eider's opinion is that it is not fully consistent with the treatment record. (Tr. 18.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) The ALJ observed that Dr. Eider opined plaintiff's muscle pain was secondary to psychiatric issue and that her pain was magnified by her psychiatric illness. (Tr. 18, 213, 253, 277, 510.) However,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

the ALJ cited no other significant evidence in the record inconsistent with Dr. Eider's findings. Dr. Eider is a treating physician and a specialist in rheumatology. She is the only physician who treated plaintiff regularly over a long-term period. Her records reflect examination findings of tender points and treatment for fibromyalgia. (Tr. 212-21, 500-13.) The ALJ seems to suggest that Dr. Eider's notes indicating plaintiff's psychiatric problems increase her pain negate any findings of limitations based on fibromyalgia. This inference is not supported by any other evidence in the record and, in fact, the ALJ pointed to no other evidence which undermines Dr. Eider's opinion. As a result, the ALJ's reasoning is not supported by substantial evidence.

  Second, the ALJ concluded that Dr. Eider's findings are internally inconsistent. (Tr. 18.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. The ALJ observed that although Dr. Eider indicated plaintiff is capable of only sedentary work, Dr. Eider assessed no walking or standing limitations and described the severity of plaintiff's fibromyalgia as moderate. (Tr. 18.) Plaintiff argues the moderate limitation on lifting and carrying compels a sedentary work limitation. (Ct. Rec. 18 at 20.) The DSHS Physical Evaluation form defines sedentary work as the ability to lift 10 pounds maximum and frequently lift and/or carry such as files and small tools, and potentially including sitting, walking and standing for brief periods. (Tr. 272, 492.) The form defines light work as the ability to lift 20 pounds maximum and frequently lift and/or carry up to 10 pounds. Light work may require walking or standing up to six of eight hours per day or involve sitting most of the time with occasional pushing and pulling.[1]

---

[1] *Cf.* 20 C.F.R. § 404.1567. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

(Tr. 272, 492 ).  Dr. Eider assessed no walking or standing limitations, which suggests plaintiff has the ability to meet the walking, standing and sitting demands of light work.  However, Dr. Eider did assess moderate lifting and carrying limitations.  "Moderate" is defined as "significant interference with the ability to perform one or more work-related activities," and plaintiff argues this is consistent with sedentary work.  (Tr. 272, 492.)  Defendant, on the other hand, argues that a "moderate" limitation is consistent with light work, and concludes Dr. Eider erroneously limited plaintiff to sedentary work.   (T. Rec. 24 at 12.)  Neither party cites any authority nor offers a compelling basis for its argument.

The meaning of "moderate" and "significant interference" is unclear as it relates to the definitions of light and sedentary work.  While it is the ALJ's purview to resolve ambiguities in the evidence, substantial evidence must support his reasoning.  Here, the ALJ offered no explanation for his conclusion that Dr. Eider's assessment of a moderate limitation in lifting and carrying means plaintiff can lift and carry up to 20 pounds.  There is no clear link between the definition of a "moderate" limitation and the light work level, and the ALJ cited no other evidence supporting his determination.  As a result, substantial evidence does not support the ALJ's conclusion and this is not a specific, legitimate reason for rejecting Dr. Eider's opinion.

Third, the ALJ determined Dr. Eider's opinion that plaintiff needs to lie down for one and a half hours per day is not supported by any findings.  (Tr. 18.)  Relevant factors in evaluating a medical opinion are the amount of relevant evidence supporting the opinion and the quality of the explanation provided in the opinion. *Lingenfelter*, 504 F.3d at *id.*; *Orn*, 495 F.3d at *id.*  Furthermore, a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604.  Dr. Eider did not describe any basis for her opinion and none is found in the medical record.  Although plaintiff reported the need to "take frequent rest periods" and fatigue, there is no evidence,

---

involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(a), (b).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

other than plaintiff's own statements, supporting Dr. Eider's opinion that plaintiff needs to lie down for an hour and half each work day. (Tr. 274.) As a result, the ALJ properly rejected the limitation requiring the ability to lie down for one and a half hours during the work day.

The ALJ did not provide specific, legitimate reasons supported by substantial evidence in rejecting the opinion of Dr. Eider. The ALJ provided adequate justification for rejecting the specific limitation on the need to lie down, but the other inferences and conclusions noted by the ALJ in rejecting Dr. Eider's opinion are not supported by substantial evidence. As a result, the ALJ erred.

### b.     Nikki Roger, MSW

Plaintiff argues the ALJ improperly rejected the opinion of Nikki Roger, a social worker at Central Washington Comprehensive Mental Health. (Ct. Rec. 18 at 21.) Ms. Roger completed a DSHS Psychological/Psychiatric Evaluation form dated January 30, 2007. (Tr. 221-25.) Ms. Roger diagnosed panic disorder with agoraphobia, obsessive compulsive disorder, and obsessive personality disorder. (Tr. 223.) She assessed one marked cognitive limitation and two severe and two moderate social limitations. (Tr. 224.) The ALJ gave little weight to Ms. Roger's opinion. (Tr. 18.)

In Social Security cases, the ALJ must consider the opinions of acceptable medical sources. 20 C.F.R. §§ 404.1527(d), 416.927(d); S.S.R. 96-2p; S.S.R. 96-6p. Acceptable medical sources include licensed physicians and psychologists.[2] 20 C.F.R. §§ 404.1513(a), 416.913(a). In addition to evidence from acceptable medical sources, the ALJ may also use evidence from "other sources" including nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).

Social Security Ruling 06-3p summarizes regulations providing that only an acceptable medical source can: (1) establish the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source. Evidence from other sources can be used to determine the severity of an impairment and how it affects the ability to work. S.S.R. 06-3p; 20 C.F.R. §§ 404.1513(d), 416.913(d). "Information from other sources cannot establish the existence

---

[2]Other acceptable medical sources are licensed podiatrists and optometrists and qualified speech-language pathologists, in their respective areas of specialty only. 20 C.F.R. §§ 404.1513(a), 416.913.(a).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

of a medically determinable impairment. . . . However, information from 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." S.S.R. 06-3p.

In evaluating the evidence, the ALJ should give more weight to the opinion of an acceptable medical source than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). An ALJ must give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993). It is appropriate to discount lay testimony if it conflicts with medical evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Lay testimony can never establish disability absent corroborating competent medical evidence. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Ms. Roger is an "other source" and the ALJ must therefore give germane reasons for rejecting her opinion. The ALJ rejected Ms. Roger's opinion because, "It is based entirely on the claimant's self-report of symptoms, which are not entirely credible." (Tr. 18.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. As discussed *supra*, the ALJ's credibility determination is supported by substantial evidence. Plaintiff does not argue that there is any basis for Ms. Roger's opinion other than plaintiff's properly discredited self-report. The ALJ's reason for rejecting Ms. Roger's opinion is germane and supported by substantial evidence. Therefore, the ALJ did not err.

    **c.    Kathleen Schormann**

Plaintiff argues the ALJ improperly rejected the opinion of Kathleen Schormann, MHP. (Ct. Rec. 18 at 22.) Ms. Schormann completed DSHS Psychological/Psychiatric Evaluation forms on December 12, 2007 and on January 6, 2009. (Tr. 264-68, 494-97.) Ms. Schormann diagnosed PTSD and panic disorder with agoraphobia. (Tr. 265, 495.) In December 2007, she assessed one severe and three marked cognitive limitations, and one severe and three marked social limitations. (Tr. 266.) In January 2009, Ms. Schormann assessed three marked cognitive limitations and two severe and one

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

marked social limitation. (Tr. 496.) The ALJ gave less weight to Ms. Schormann's opinion than to the opinion of Dr. Dougherty, an examining psychologist. (Tr. 19.)

      One reason given by the ALJ for rejecting Ms. Schormann's opinion is that her assessments are not consistent with plaintiff's daily activities. (Tr. 19.) Lay testimony may be rejected when the testimony is inconsistent with a claimant's demonstrated abilities and daily activities. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1163 (9th Cir. 2008). The ALJ cited plaintiff's ability function independently, travel, attend appointments, do stained glass work, shop and manage finances as activities inconsistent with the degree of limitation assessed by Ms. Schormann. (Tr. 19, 209, 503, 529.) As discussed *supra*, although this may not be the only interpretation of these activities and another ALJ may have interpreted them differently, it is reasonable for the ALJ to conclude that plaintiff's activities demonstrate abilities inconsistent with the marked and severe limitations identified by Ms. Schormann. As a result, the reason is germane to the witness and supported by substantial evidence.

      The ALJ also rejected Ms. Schormann's opinion because it is inconsistent with the opinion of Dr. Dougherty, an examining psychologist. (Tr. 19.) Dr. Dougherty's opinion contains detailed notes and the results of mental status exam. (Tr. 202-11.) Dr. Dougherty opined that plaintiff may have some mild cognitive impairment which has not affected her ability to work in the past. (Tr. 211.) He indicated concentration and memory problems may be present, and that plaintiff may have difficulty working complex, stressful environments or around people she does not know well. (Tr. 211.) However, he described her social skills as "quite good." (Tr. 211.) The ALJ found Dr. Dougherty's opinion consistent with the treatment record and gave it significant weight. (Tr. 19.) Dr. Dougherty's opinion contrasts with Ms. Schormann's evaluations which indicated marked and severe social and cognitive problems. It was appropriate for the ALJ to give more weight to the opinion of Dr. Dougherty, an acceptable medical source, than to the opinion of Ms. Schorman, an "other source." The ALJ's resolution of the conflicting opinions is based on the contents of the assessments is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

therefore germane to the witness and supported by substantial evidence.[3]

    **d.**     **Other Psychological Evidence**

Plaintiff argues the ALJ failed to reject the opinions of Dr. Dougherty, Dr. Birdlebough, Kathleen Mack ARNP, and Maria Young PA-C. (Ct. Rec. 18 at 22.) Plaintiff notes that each of these providers assessed GAF scores ranging between 45 and 55[4] and argues these GAF scores support the opinions of other providers properly rejected by the ALJ, discussed *supra*. (Ct. Rec. 18 at 22.) Plaintiff assumes the ALJ did not reject the opinions of "because none of them provided an assessment of Ms. Golloian's specific functional assessments," although the basis for this assumption about the ALJ's motivations is not found in the record. (Ct. Rec. 18 at 22.)

Plaintiff alleges the ALJ did not provide any reason for rejecting the opinion of Dr. Dougherty. (Ct. Rec. 18 at 22.) To the contrary, the ALJ accepted Dr. Dougherty's opinion and incorporated limitations identified by Dr. Dougherty in the RFC. (Tr. 16, 20.) Dr. Dougherty

---

[3] Plaintiff argues the ALJ rejected the opinions of Ms. Roger and Ms. Schormann because they are not acceptable medical sources. (Ct. Rec. 18 at 21-22, 25 at 3-4.) In assessing the opinions, the ALJ noted both providers are not acceptable medical sources. (Tr. 18-19.) The court does not interpret the ALJ's observation that Ms. Roger and Ms. Schormann are acceptable medical sources to be part of the basis for rejecting the opinions. It is appropriate for the ALJ to note they are not acceptable medical sources because their opinions are entitled to less weight as a matter of law. If the ALJ intended to cite Ms. Roger's and Ms. Schormann's status as "other source" professionals as a reason for rejecting their opinions, the ALJ erred because the ALJ is directed to consider all the medical evidence, regardless of source. 20 C.F.R. § 404.1513. However, any error is harmless because the ALJ cited other germane reasons supported by substantial evidence for rejecting the opinions. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

[4] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32. A GAF score of 51-60 indicates moderate symptoms or any moderate impairment in social, occupational or school functioning. *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

assessed a GAF of 50 suggesting a serious impairment, but he also opined that plaintiff's social skills were good and she may have mild cognitive difficulties. (Tr. 211.) Although the GAF score of 50 might be perceived to suggest a greater impairment than supported by Dr. Dougherty's narrative, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). Significantly, "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Thus, Dr. Dougherty's narrative discussion is more probative than a GAF score in ascertaining plaintiff's functional capacity. As a result, the ALJ's consideration of Dr. Dougherty's opinion was appropriate and there was no error in failing to specifically discuss the GAF score.

Plaintiff also argues the GAF scores assessed by Dr. Birdlebough, Kathleen Mack and Maria Young should have been specifically rejected by the ALJ. (Ct. Rec. 18 at 22.) The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Plaintiff cites no authority suggesting that GAF scores alone are significant probative evidence. Dr. Birdlebough assessed GAF scores of 48 and 45, respectively. (Tr. 542-44, 552.) Ms. Mack assessed GAF scores between 48 and 60, suggesting symptoms ranging from severe to moderate and approaching mild. (Tr. 514, 516, 519, 521, 523, 526, 529, 531, 533.) Ms. Young assessed GAF scores of 48, 52 and 54. (Tr. 537, 539, 541.) Not mentioned by plaintiff is that the ALJ also did not discuss the GAF scores assessed by Dr. Rodenberger, which ranged from 55 to 65.[5] (Tr. 196, 198, 260, 384.) Given the range of GAF scores in the record and the fact that GAF scores do not correlate to the severity requirements, the ALJ did not err in failing to specifically address the scores. As noted by plaintiff, the records from Dr. Birdlebough, Ms. Mack and Ms. Young contain no functional assessments. (Ct. Rec. 18 at 22.) The

---

[5] A GAF score of 61-70 indicates "some mild symptoms, (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16

GAF scores alone have little probative value. Accordingly, the ALJ did not err by failing to discuss the assessments of Dr. Birdlebough, Ms. Mack and Ms. Young.

**3.     Step Four**

Plaintiff argues the ALJ failed to include all of plaintiff's limitations in the hypothetical to the vocational expert. (Ct. Rec. 18 at 25.) An ALJ is free to accept or reject restrictions in a hypothetical that are not supported by substantial evidence. *Osenbrook v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001); *Magallenes*, 881 F.2d at 756-57. However, because the ALJ improperly rejected Dr. Eider's opinion, the hypothetical to the vocational expert should also be reconsidered on remand.

Plaintiff also argues the ALJ failed to meet his affirmative duty to ensure the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (Ct. Rec. 18 at 25.) S.S.R. 00-4p provides:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> > Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> >
> > If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

As noted in *Massachi v. Astrue*, " The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the Dictionary of Occupational Titles." 486 F.3d 1149, 1153 (9th Cir. 2007). In this case, the ALJ did not ask the VE if the evidence provided conflicted with information in the DOT. On remand, the ALJ should ensure that the vocational expert's testimony is consistent with the requirements of S.S.R. 00-4p.

**4.     Remedy**

The ALJ did not properly justify the rejection of the opinion of Dr. Eider, a treating physician. There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining physician. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Pitzer v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

*Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Another approach is found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), which holds a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). In this case, Dr. Eider's opinion contains an ambiguity not adequately addressed by the ALJ. The court cannot determine as a matter of law that the opinion should be credited because resolution of ambiguities in the evidence is the purview of the ALJ. *See Morgan*, 169 F.3d at 599-600. Thus, remand is the proper remedy.

### CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. Remand is necessary for reconsideration of Dr. Eider's opinion. On remand, the ALJ may find it helpful to further develop the record. The ALJ should also ensure the RFC and the hypothetical to the vocational expert reflects all of plaintiff's limitations supported by the record and confirm the vocational expert's testimony meets the requirements of S.S.R. 00-4p. The court offers no opinion as to the outcome on remand.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 23 )** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18

1  plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

2  DATED February 8, 2011.

4                            S/ JAMES P. HUTTON
                       UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -19